IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JASON SCOTT McLOUD,

    Plaintiff,

v.                                          CIVIL ACTION NO. 2:19-cv-00551

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Jason Scott McLoud ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f.  By standing order entered on January 4, 2016, and filed in this case on July 29, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)  Presently pending before this Court are Claimant's Memorandum in Support of Judgment on the Pleadings (ECF No. 14), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15), and Claimant's Reply to Brief in Support of Defendant's Decision (ECF No. 16).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 14), **DENY** the Commissioner's request to affirm his decision (ECF No. 15), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter to the Commissioner for further proceedings.

## I. BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 40 years old at the time of his alleged disability onset date and 43 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 436.)[1] He is a high school graduate. (*Id.* at 441.) Most recently, he worked as a maintenance man at a retail store, and he has also been employed as a convenience store clerk, restaurant cashier, gambling parlor clerk, and dishwasher. (*Id.* at 442.) Claimant alleges that he became disabled on July 2, 2015, due to short term memory loss, "difficult learning," a broken ankle, bipolar disorder, anger issues, anxiety, depression, and "3 brain concussions in past." (*Id.* at 440–41.)

Claimant protectively filed his applications for benefits on February 19, 2016. (*Id.* at 407–08; *see id.* at 409–22.) His claims were initially denied on May 31, 2016, and again upon reconsideration on August 4, 2016. (*Id.* at 317–29, 331–44.) Thereafter, on September 1, 2016, Claimant filed a written request for hearing. (*Id.* at 345–46.) An administrative hearing was held before an ALJ on March 30, 2018, in Charleston, West Virginia. (*Id.* at 214–36.) On July 19, 2018, the ALJ rendered an unfavorable decision. (*Id.* at 123–43.) Claimant then sought review of the ALJ's decision by the Appeals Council

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 9.

on September 19, 2018. (*Id.* at 403–06.) The Appeals Council denied Claimant's request for review on May 30, 2019, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–7.)

Claimant timely brought the present action on July 26, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 8) and a transcript of the administrative proceedings (ECF No. 9). Claimant subsequently filed his Memorandum in Support of Judgment on the Pleadings. (ECF No. 14.) The Commissioner then filed his Brief in Support of Defendant's Decision (ECF No. 15), and in response, Claimant filed his Reply to Brief in Support of Defendant's Decision (ECF No. 16). As such, this matter is fully briefed and ready for resolution.

    B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

    1. *Opinion Evidence: Dr. Susan L. Cavender, M.D.*

Claimant's longtime primary care physician, Dr. Susan L. Cavender, M.D. ("Dr. Cavender"), offered several medical opinions, which are summarized below.

    *a.* February 7, 2016 Medical Source Statement/Opinion – Physical

Dr. Cavender completed a "Medical Source Statement/Opinion – Physical" form for Claimant on February 7, 2016. (Tr. at 720–25.) She stated that she began treating Claimant in 2003 and described his present diagnoses as a severe right ankle fracture and short-term memory loss caused by three previous concussions, giving Claimant a "fair" prognosis. (*Id.* at 720.) When asked to list Claimant's symptoms, Dr. Cavender stated

3

that Claimant suffered from "[c]onstant [right] ankle pain 4–5/10 at rest" and "standing pain (worse the longer he stands) [greater than or equal to] 7/10" and noted that "steps [are] difficult" for Claimant and that his "ankle continues to swell." (*Id.*) She also stated that Claimant had "short term memory problems," which caused "difficulty learning . . . material." (*Id.*) She explained that Claimant "has to be shown repetitively (numerous)" and "has problem[s] in everyday life at home [with] short term memory." (*Id.*) In addition, Dr. Cavender stated that Claimant experienced "[n]o side effects" associated with his medications, but "Seroquel makes him sleep which is desired." (*Id.*)

Dr. Cavender opined that Claimant's "impairments lasted or can . . . be expected to last at least twelve months" and that he was not "a malingerer." (*Id.* at 720–21.) She further opined that "emotional factors" caused by Claimant's depression and anxiety affected the severity of his symptoms and functional limitations. (*Id.* at 721.) When asked how often Claimant's symptoms would interfere with his attention and concentration during the workday, Dr. Cavender opined that they would do so "[c]onstantly." (*Id.*) She opined that Claimant was capable of low stress jobs "freq[uently] (will try)" and elaborated that Claimant "can tolerate [a] low stress job" but "gets [increased] anxiety when [he] has trouble learning, e.g. took him more than one month to learn a new task on cash register and cash register was his job." (*Id.* at 721–22.)

Regarding Claimant's physical limitations, Dr. Cavender opined that Claimant could not walk even one city block without rest or severe pain. (*Id.* at 722.) She opined that he could sit for more than two hours at a time but could stand for only thirty minutes at a time. (*Id.*) She further opined that Claimant could stand or walk for less than two hours in an eight-hour workday and could sit for about six hours in an eight-hour workday and that he would need to walk around one to two times during an eight-hour workday

4

for six to ten minutes at a time. (*Id.* at 722–23) Dr. Cavender opined that Claimant would "need a job that permits shifting positions at will from sitting, standing or walking" and that he would need three to four unscheduled breaks lasting six to ten minutes each during a regular workday. (*Id.* at 723.) She also opined that he would need to elevate his legs to at least forty-five degrees for more than six hours in an eight-hour workday and that he would need a cane. (*Id.*)

When asked how many pounds Claimant could lift and carry in a competitive work situation, Dr. Cavender opined that Claimant could lift and carry less than ten pounds frequently, ten pounds occasionally, twenty pounds rarely, and fifty pounds never. (*Id.* at 724.) She opined that he could frequently look down, turn his head right or left, look up, or hold his head in a static position. (*Id.*) And she opined that he could frequently twist or stoop, rarely climb stairs "with assistance," and never crouch or climb ladders. (*Id.*) She opined that he had no significant limitations with reaching, handling, or fingering. (*Id.*)

Dr. Cavender further opined that Claimant was likely to have "good days" and "bad days" because the cold made his pain worse. (*Id.* at 725.) She opined that his conditions would cause him to miss work about two days per month. (*Id.*) In addition, she stated that he experienced blurry vision with reading frequently at times, explaining that he needed an eye exam but could not afford one, and that "temperature extremes bother [his] ankle pain [and] breathing fumes bother[s] [his] breathing at times." (*Id.*)

When asked if Claimant was capable of working a full-time work schedule at any level of exertion, Dr. Cavender opined that he was not. (*Id.*)

*b.* June 16, 2016 Letter

On June 16, 2016, Dr. Cavender wrote a letter at Claimant's request so that he would not "lose[] food stamps" in which she explained that Claimant "has medical problems that limit his physical ability to work more than 20 hours a week at this time" for "at least the next 6 months, then he will be re-evaluated." (*Id.* at 743, 745.)

*c.* January 9, 2017 Disability/Incapacity Medical Assessment

Dr. Cavender completed a Disability/Incapacity Medical Assessment form at the request of the West Virginia Department of Health and Human Resources on January 9, 2017. (*Id.* at 782.) She listed Claimant's diagnoses as chronic pain status-post right ankle fracture and short-term memory problems from concussions. (*Id.*) She stated that his prognosis was "fair" and that his disability/incapacity would last for twelve months. (*Id.*)

When asked to explain the employment-related limitations that Claimant's conditions caused, Dr. Cavender opined that Claimant "cannot be on [his] feet" for lengthy periods due to pain and that he had difficulty learning. (*Id.*) When asked whether any accommodations could be made for Claimant so that he "could participate in community service or similar activity," Dr. Cavender opined that he would be limited to sedentary work and would need "repetition [with] learning." (*Id.*) Similarly, when asked if Claimant would be able to participate in educational activity with accommodations, Dr. Cavender opined that he would not due to his "memory problems" and "difficulty learning." (*Id.*) She further opined that in order for him to participate in educational activity in a classroom setting, he "[n]eeds [a] lot of repetition to learn [and] of things [within] his ability to learn" and "needs non [weight] bearing." (*Id.*) She opined that Claimant is "able to participate in a work or educational activity at least 5 hours per week with accommodations." (*Id.*)

In addition, Dr. Cavender opined that Claimant's conditions did not require that someone stayed in his home "on a continuous basis" but that he was unable to care for children under age six. (*Id.*)

### d. August 22, 2017 Physician Certificate of Health

Dr. Cavender completed a WorkForce West Virginia Unemployment Compensation Division Physician Certificate of Health for Claimant on August 22, 2017. (*Id.* at 883.) When asked to explain "the nature of [Claimant's] disability/illness," Dr. Cavender stated, "[history of] severe ankle fracture [right] with poor healing/chronic pain prevents prolonged standing," "short term memory problem from [traumatic brain injury]," and "having bad anxiety with panic attacks." (*Id.*) She opined that Claimant was not "currently able to perform any full-time work," and when asked for the earliest date that Claimant could resume full-time work, she opined, "doubt he will." (*Id.*) When asked to list Claimant's medical restrictions, Dr. Cavender opined, "standing [less than] one hour" and "could work 4 hr/day but would have sitting break every hour 5–10 min." (*Id.*) She also opined that Claimant cannot "handle stress." (*Id.*)

## C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no

7

finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20

C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through December 31, 2016. (Tr. at 128.) He further determined that Claimant had not engaged in

substantial gainful activity since the alleged onset of his disability. (*Id.*) He found that Claimant's "status post open reduction and internal fixation (ORIF) of right ankle fracture," obesity, bipolar disorder, anxiety, mild neurocognitive disorder, and alcohol use, opiate use, stimulant use, and cannabis use constituted "severe" impairments. (*Id.* at 129.) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 129–30.) The ALJ determined that Claimant has the following RFC:

> lift/carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for two hours in an eight hour workday; no operation of foot controls; must be permitted to raise feet above waist level during normal breaks; a cane is permitted for ambulation; occasional balancing, stooping, kneeling and crouching; no crawling; frequent handling and fingering; and no exposure to hazardous machinery or unprotected heights. Additionally, he is limited to simple, routine and repetitive tasks; no fast-paced production; work in a low stress job defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public.

(*Id.* at 131.)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 135.) He noted that Claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills is not an issue in this case." (*Id.*) Because the ALJ determined that Claimant was unable to perform the full range of sedentary work, he enlisted a vocational expert to

aid in his finding that Claimant is capable of working as a bench hand, surveillance system monitor, or products sorter. (*Id.* at 136.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from July 2, 2015, through the date of this decision." (*Id.* at 137.)

## II. LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III. ANALYSIS

Claimant argues that the ALJ failed to fully consider the opinions of his primary care provider, Dr. Cavender, which if adopted would preclude work. (ECF No. 14 at 8–

12

10.) He asks this Court to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner responds that the ALJ's rejection of Dr. Cavender's opinion that Claimant could not work full-time is supported by substantial evidence and that the limitations established by the record are fully reflected in the ALJ's RFC assessment. (ECF No. 15 at 15–20.) Claimant replies that the ALJ did not consider or address the entirety of Dr. Cavender's opinions. (ECF No. 16 at 1–2.)

When determining whether a claimant is disabled, the ALJ must "evaluate and weigh medical opinions" by considering, among other factors, "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). A treating physician's opinion about a claimant's condition may be given "greater weight" than that of a non-treating physician "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.*

Here, the ALJ considered two pieces of opinion evidence from Dr. Cavender: a February 7, 2016 "assessment form" in which, according to the ALJ, she "opined [Claimant] was incapable of working a full-time work schedule at any level of exertion" and an August 22, 2017 "Physician Certificate of Health" in which she "opined [Claimant]

13

was unable to perform full-time work." (Tr. at 134.) The ALJ then explained that he gave "little weight" to these opinions because "they are extreme and inconsistent with orthopedic treatment notes, ankle imaging, and orthopedic opinion . . . physical examinations from specialists including neurologist and consultative examiner . . . [Claimant's] activities of daily living" and "mental status findings from mental consultative examination." (*Id.*) He also stated "that the finding of disability or inability to work is an issue reserved for the Commissioner." (*Id.*)

But as Claimant points out, Dr. Cavender offered many more opinions about Claimant's functional abilities, none of which the ALJ discussed in his decision. (ECF No. 14 at 8–9.) In both the February 7, 2016 Medical Source Statement/Opinion – Physical form and the August 22, 2017 Physician Certificate of Health referenced by the ALJ, she made a number of other statements about Claimant's limitations, some of which relate directly to parts of the RFC assessment. (*See* Tr. at 720–25, 883.) The very definition of a "medical opinion" is a "statement[] from [an] acceptable medical source[] that reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [the] impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Dr. Cavender made such statements about Claimant, but the ALJ chose to focus not on her explanations of Claimant's limitations and abilities—which relate to the RFC assessment the ALJ was conducting—but on her ultimate conclusions that Claimant could not sustain full-time work—which do not. (*See* Tr. at 134.) In fact, those conclusions do not qualify as "medical opinions" at all. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the ALJ permissibly rejected Dr. Cavender's assertions that Claimant was unable to work full-time because that determination is an administrative

14

finding reserved to the Commissioner, *see id.*, he nonsensically ignored her other statements and failed to evaluate whether they were entitled to the controlling weight typically accorded to a treating physician's opinions. (Tr. at 134.) The undersigned **FINDS** that this was error. However, the undersigned does not suggest that Dr. Cavender's opinions are entitled to controlling weight, only that the ALJ must explicitly consider them as required by the regulations. *Farris v. Berryhill*, No. 2:17-cv-02051, 2018 WL 2175884, at *3 (S.D.W. Va. May 11, 2018) ("Courts cannot determine if findings are unsupported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence. This is especially true for the opinions of treating physicians." (internal quotation marks and citations omitted)); *Mason v. Colvin*, No. 4:13-cv-00093-D, 2014 WL 4162788, at *5 (E.D.N.C. July 29, 2014) ("While an ALJ is under no obligation to accept any medical opinion, he must nevertheless explain the weight accorded such opinions." (internal citations omitted)).

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 14), **DENY** the Commissioner's request to affirm his decision (ECF No. 15), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter to the Commissioner for further proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of

this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: June 12, 2020

Dwane L. Tinsley
United States Magistrate Judge